STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

ADAM A. REEVES (NYBN 2363877)
CLAUDIA A. QUIROZ (CABN 254419)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7157
    FAX: (415) 436-7234
    adam.reeves@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) NO. 21-CR-0227 WHA |
| Plaintiff, | ) |
| | ) UNITED STATES' |
| v. | ) SENTENCING MEMORANDUM |
| | ) |
| ROSE LIN, | ) Sentencing Date: March 15, 2022, at 2:00 p.m. |
|    also known as Rose Sweihorn Tong, | ) |
| Defendant. | ) |

### I. INTRODUCTION

Defendant, Rose Lin ("Lin") stands before the Court to be sentenced after pleading guilty to Count One of the captioned Indictment charging her with Conspiracy to Commit Theft of Trade Secrets and Wire Fraud, in violation of Title 18, United States Code, Section 371. The Court has set March 15, 2022, at 2:00 p.m. as the date for judgment and sentencing. Lin has pled guilty pursuant to a plea agreement dated August 24, 2021, which the parties have submitted for the Court's consideration. *See*

UNITED STATES' SENTENCING MEMORANDUM FOR DEFENDANT ROSE LIN
21-cr-0227 WHA

1

Dkt. No. 22.  The government submits the following sentencing memorandum to advise the Court of its Sentencing Guidelines calculation, its sentencing recommendation, and its position regarding the defendant's objection to the PSR.

The government agrees with United States Probation Office's total offense level calculation of 27, that Lin's criminal history category is I, and that the maximum statutory sentence for a conviction for Conspiracy in violation of 18 U.S.C. § 371 is a term of imprisonment of sixty (60) months.  For the reasons set forth herein, the government concurs with the recommendation of the U.S. Probation Office as set forth in the Presentence Investigation Report ("PSR") and recommends that the defendant be sentenced to a term of imprisonment of twelve (12) months and a day; a term of supervised release of three years; a fine of $5,000; and a special assessment of $100.

## II.    THE OFFENSE CONDUCT

Defendants Racho Jordanov ("Jordanov") and Lin are former employees of Genentech.  Jordanov and Lin, who are not married but are in a long-term personal relationship, founded a start-up biotech company in Asia to compete with Genentech.  Lin Plea Agreement, Dkt. No. 22 at 3.  In 2012, Jordanov and Lin started JHL Biotech ("JHL") in Taiwan.  According to one witness, they sought to build the "Genentech of Taiwan."  The idea behind JHL was to create a biosimilar development and manufacturing company that would sell its products throughout Asia and Europe.  *Id.*

JHL was built on a lie, however—thousands of confidential and proprietary documents were stolen from Genentech, some of which were trade secrets.  Jordanov and Lin used this library of stolen confidential information to accelerate the timeline for JHL's race to commercialize "biosimilars" or generic versions of highly profitable Genentech biologic drugs.

### A.    Theft of Genentech Documents

Jordanov and Lin obtained the stolen documents in a variety of ways.  They solicited Genentech documents from former and current Genentech employees.  Jordanov brought some of them himself from Genentech.  Jordanov and Lin recruited approximately a dozen former Genentech employees who brought hundreds of stolen documents with them to JHL.  *Id.*  And, in a coup, Jordanov and Lin also recruited Xanthe Lam, a distinguished Principal Scientist at Genentech, and her husband, Allen Lam,

also former Genentech employee who left the company in 1998. Jordanov and Lin used the Lams to gain access to a treasure trove of confidential and proprietary material stolen from Genentech and circulated within JHL. PSR at ¶ 31. Lin spent years coaxing the Lams to provide confidential Genentech information, first at two other Asian biotech start-ups, and finally at JHL. Dkt. No. 22 at 4-5. Xanthe and Allen Lam were corporate thieves for hire and Jordanov and Lin hired them. *Id.* Indeed, Xanthe Lam continued to work for Genentech while working for JHL—which she was not authorized to do—and Lin actively assisted Xanthe Lam to conceal this fact by not entering into a contract with her and paying her through her husband, Allen.

### B. Theft of Trade Secrets

After he left Genentech, Jordanov kept stolen trade secret material from Genentech, including critical technology transfer documents which he utilized in 2016 to promote JHL's state-of-the-art manufacturing facility in Wuhan, China. PSR at ¶ 34. Jordanov sometimes personally used and instructed others to use confidential, proprietary, trade secret Genentech documents and information relating to Genentech's Tech Transfer procedures and processes. Plea Agreement for Racho Jordanov at 7. Jordanov used Genentech's confidential and complex Tech Transfer documents in the development, construction, and operation of new facilities for JHL including its manufacturing facility in Wuhan, China. *Id.* Specifically, on August 17, 2016, Jordanov possessed two of Genentech's Tech Transfer-related documents which he emailed to JHL employees and copied Lin on the email. *Id.*

Lin knew Jordanov had sent two of these Tech Transfer documents to a JHL employee and asked her to "convert" them into JHL documents. Dkt. No. 22 at 6. She understood that by directing that they be "converted," Jordanov intended the JHL employee to maintain the original content of the documents as drafted by Genentech, but make the documents appear as if they were documents JHL generated on its own. *Id.* Based on her discussions with him, Lin assumed that Jordanov also had access to additional Genentech documents. *Id.*

### C. Scheme to Defraud Sanofi

In 2016, Jordanov and Lin monetized the value of the materials they stole from Genentech by inducing Sanofi S.A., a major French biotech company, to partner with JHL to co-market JHL's

UNITED STATES' SENTENCING MEMORANDUM FOR DEFENDANT ROSE LIN
21-CR-0227 WHA

3

biosimilars for the Asian market. Jordanov and Lin fraudulently induced Sanofi to invest over $102 million in JHL—in a strategic partnership worth in excess of $337 million—by (falsely) assuring Sanofi that JHL had "freedom to operate" or use all the intellectual property JHL claimed to have to manufacture the biosimilars. In fact, Jordanov and Lin knew that JHL had stolen significant amounts of the intellectual property it used from Genentech.

By November 2018, when Genentech sued JHL in federal court in San Francisco and the fraud was publicly revealed, JHL—once privately valued for as much as $900 million—virtually collapsed. Sanofi lost its $102 million investment. JHL eventually settled with Genentech by agreeing, among other things, to desist in all development of the biosimilars like Pulmozyme, Rituxan, Avastin, Herceptin, and Tecentriq, that JHL had worked on for nearly seven years. Meanwhile, until 2021, Jordanov and Lin walked away with millions and effectively went into hiding abroad. Sanofi, which had invested in JHL with the goal of commercializing these biosimilars, found its investment reduced to nothing.

### D. Voluntary Return to the United States

In July 2021, Jordanov and Lin voluntarily returned to the United States from Asia to face the charges in the indictment they assumed awaited them, a decision few corporate wrongdoers ever make. Shortly thereafter, on August 24, 2021, both co-defendants pled guilty to one count of Conspiracy to Commit Theft of Trade Secrets and Wire Fraud in violation of 18 U.S.C. § 371. Since then, they have worked diligently to settle and resolve the claims against them by Genentech and Sanofi, the corporate victims of this offense.

The defendants committed a serious crime. But they also took serious steps to atone for their wrongdoing. Theirs is an example the government wants other corporate wrongdoers to follow. To accomplish that, the defendants' sentence should balance the need for punishment with the need to reward the acceptance of responsibility shown in their decision to voluntarily return to the United States.

## III. SENTENCING GUIDELINES CALCULATIONS

The government concurs with the PSR's Sentencing Guidelines calculations, which results in a total offense level of 27. *See* PSR ¶¶ 48-59. The total offense level is calculated as follows:

|  | U.S.S.G. Section | Points |
|---|---|---|
| Base Offense Level | 2B1.1(a)(2) | 6 |
| Specific Offense Characteristics |  |  |
|    Gain Greater Than $9,500,000 | 2B1.1(b)(1)(K) | +20 |
|    Substantial Part of Fraudulent Scheme Committed from Outside US | 2B1.1(b)(10)(B) | +2 |
|    Trade Secret Transported Outside of the US | 2B1.1(b)(14)(A) | +2 |
| Acceptance of Responsibility | 3E1.1 | −3 |
| Total Offense Level |  | 27 |

The government agrees that the defendant's criminal history category is I. Although this would result in a Guidelines range of 70-87 months, the maximum sentence for a conviction for Conspiracy in violation of 18 U.S.C. § 371 is a term of imprisonment of sixty (60) months.

## IV.   DISCUSSION

### A.   Applicable Law

Title 18, United States Code, section 3553(a) directs courts to consider a number of factors in determining an appropriate sentence. *See United States v. Booker*, 543 U.S. 220 (2005). In this case, these factors indicate that a sentence of twelve (12) months and a day is sufficient, but not greater than necessary, to achieve the goals of sentencing. *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). As applicable to this case, the key factors include the nature and circumstances of the offense and the history and characteristics of the defendant, § 3553(a)(1); the sentencing goals (including reflecting the seriousness of the offense, promoting respect for the law, providing just punishment, affording adequate deterrence to criminal conduct, protecting the public from further crimes by the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner), § 3553(a)(2); the kinds of sentences available, § 3553(a)(3); the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, § 3553(a)(6); and the need to provide restitution to any victims of the offense, § 3553(a)(7).

Although the Supreme Court's decision in *Booker* has rendered the Sentencing Guidelines

UNITED STATES' SENTENCING MEMORANDUM FOR DEFENDANT ROSE LIN
21-CR-0227 WHA

5

advisory, the Guidelines still remain the "starting point and initial bench-mark" for sentencing. *Kimbrough v. United States*, 552 U.S. 85, 108, (2007) (internal quotation marks and citation omitted); *see Carty*, 520 F.3d at 991 (en banc); *United States v. Ellis*, 641 F.3d 411, 415 (9th Cir. 2011). While there is no presumption of reasonableness for a Guidelines range sentence, if a district judge "decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Carty*, 520 F.3d at 991-992 (citing *Gall v. United States*, 552 U.S. 38, 50, (2007)); *see also United States v. Munoz-Camarena*, 631 F.3d 1028, 1030 (9th Cir. 2011) ("district court must start with the recommended Guidelines sentence, adjust upward or downward from that point, and justify the extent of the departure from the Guidelines sentence."). As the Supreme Court recognized in *Gall*, "a major departure should be supported by a more significant justification than a minor one." 552 U.S. at 50. Finally, "[a]s a general rule, the preponderance of the evidence standard is the appropriate standard for factual findings used for sentencing." *United States v. Armstead*, 552 F.3d 769, 777-78 (9th Cir. 2008); *see, e.g.*, *United States v. Treadwell*, 593 F.3d 990, 1001 (9th Cir. 2010).

**B.    A Sentence of Twelve (12) Months and a Day Would Vindicate the Interests Set Forth in 18 U.S.C. § 3553(a).**

   **1.    Nature and Circumstances of the Offense and the History and Characteristics of the Defendant (18 U.S.C. §§ 3553(a)(1), (2))**

      **a.    The Seriousness of the Offense**

With respect to the nature and circumstances of the offense, the defendant's conduct has been taken into account in calculating the applicable offense level and with the application of the maximum statutory penalties. 18 U.S.C. § 3553(a)(1). The seriousness of the defendant's offense, however, cannot be overstated. The PSR characterizes Lin's conduct as "deceptive and repetitive." PSR Sentencing Recommendation at 1. As the PSR further notes,

> Jordanov and Lin, together with others, engaged in a fraudulent scheme to steal, and otherwise obtain, confidential, proprietary, and trade secret information from Genentech, and other biotech companies, and used it to accelerate the timeline for, and reduce the costs of JHL Biotech's development and production of biosimilars or generic versions of Genentech biologics. They converted, and intended to convert, confidential proprietary, and trade secret information, relating to a product or service used, and intended to be used to the economic benefit of JHL Biotech and themselves. Part of the fraudulent scheme was committed from China, and Ms. Lin knew the trade secret would be

UNITED STATES' SENTENCING MEMORANDUM FOR DEFENDANT ROSE LIN
21-CR-0227 WHA

transported outside the United States to China. As a result of her conduct in the offense, Ms. Lin gained over $9.5 million.

### b.  Lin's Voluntary Return to the United States

As is reflected in her plea agreement, however, Lin has acknowledged the seriousness of her conduct. Dkt. No. 22 ¶ 2. Moreover, her willingness to voluntarily and promptly return to the United States to face the consequences of her actions is an extraordinary step that should be given the credit it deserves. The U.S. Probation Office recommends a term of incarceration of twelve (12) months and a day, which represents a downward variance from the guidelines provision of 60 months in custody. PSR at Sentencing Recommendation. The government believes that the importance of Lin's (and Jordanov's) decision to voluntarily return to the United States to face the consequences of her wrongdoing justifies this variance. It is important that wrongdoers living abroad make the same decision as Lin and Jordanov and return to the United States to face accountability. Too often, wealthy corporate defendants abscond into obscurity, even as the United States works diligently to track them down and extradite them whenever it can. By doing so, these corporate wrongdoers not only evade punishment, but they also deny the public the accounting and disclosure it needs to promote respect for the law. Without a public resolution, there is little deterrence and, worse, there can be the false perception that some wealthy defendants, who can afford to hide, are above the law. The examples of Racho Jordanov and Rose Lin stand in contrast to the corrosive examples of others who have absconded. They should be fully rewarded for their willingness to surrender because we want others to know that if they do the same thing then they too will receive a similarly reduced sentence. For these reasons, the United States concurs with the recommendation of U.S. Probation.

### c.  History and Characteristics of the Defendant.

The history and characteristics of the defendant are adequately summarized in the PSR. Lin, age 73, has no criminal history. She is an immigrant who faced significant social and economic hardship as a foreigner in this country having to care for her three children as a single mother. As the PSR notes, "[t] Through hard work and determination, Ms. Lin was able to climb out of poverty and achieve financial security for her family. In 2006, she founded a charity that provided financial and spiritual

support for disadvantaged children.  Ms. Lin's contributions enabled the charity to support 400 students from 2012 to 2021." PSR Sentencing Recommendation at 2.

**2.    Sentencing Goals and the Need to Avoid Sentencing Disparities (18 U.S.C. §§ 3553(a)(2), (6))**

The government agrees with Probation that a downward variance is warranted in this case and posits that the recommended sentence is fair, reasonable, and sufficient—but not greater than necessary—to achieve the goals of sentencing.  As set forth above, the recommended sentence reflects the seriousness of the offense.  It also promotes respect for the law, provides just punishment, affords adequate deterrence to criminal conduct, and protects the public from further crimes by the defendant, something the government does not contemplate.  As the PSR notes, the assigned Probation Officer "does not make this recommendation for a below the guideline sentence lightly considering Ms. Lin's conduct." PSR Sentencing Recommendation at 2.  Yet, the Probation Officer gave due consideration "to the mitigating factors in this case, including Ms. Lin's age, community support, and her voluntary return to the United from Taiwan to face the consequence of her actions." *Id.*  The PSR also noted that the recommended sentence of twelve (12) months and a day "also takes into consideration the need to avoid sentencing disparity among similarly situated defendants." *Id.*  Jordanov is without question more culpable than Lin.

**3.    The Need to Provide Restitution to Victims of the Offense (18 U.S.C. § 3553(a)(7))**

As the PSR notes, "Lin has taken the step of financially compensating her victims, Sanofi and Genentech and . . . are not requesting restitution." PSR Sentencing Recommendation at 2.  Accordingly, the U.S. Probation Office is not recommending payment of restitution.  The government concurs.

**C.    Objections to the PSR**

Lin objects to the two-level enhancement for Sophisticated Means (U.S.S.G. § 2B1.1(b)(10)(B) recommended by the PSR.  As set forth in its objection, defense counsel believes that "the fact that Lin's conduct occurred in Taiwan was not the result of sophisticated efforts to conceal her conduct, but

UNITED STATES' SENTENCING MEMORANDUM FOR DEFENDANT ROSE LIN
21-CR-0227 WHA

8

because she was living and working in Taiwan and JHL was based in Taiwan and China." Addendum to the Presentence Report. In making this argument, defense counsel suggests that the enhancement is intended to punish offenses that are concealed because they are outside the United States and that there was nothing concealed about the deal with Sanofi but, rather, that it happened to occur outside the United States. The plain language of § 2B1.1(b)(10)(B), however, contemplates that "a substantial part of the fraudulent scheme was committed outside the United States." That is precisely what happened here. The words of the enhancement are not limited to concealment; rather, the enhancement appears intended to capture all offenses that are more difficult to prosecute because a substantial part of the scheme occurred outside the United States. U.S. Probation similarly disagrees with defense counsel's objection. According to the PSR, the enhancement applies if the criminal conduct involved one of the three alternatives enumerated in § 2B1.1(b)(10)(B). Thus, "because a substantial part of the fraudulent scheme was committed from China, a two-level increase is warranted pursuant to USSG §2B1.1(b)(10)(B)."

## CONCLUSION

For these reasons, the United States recommends that the defendant, Rose Lin, be sentenced to a term of imprisonment of twelve (12) months and a day; a term of supervised release of three years; a fine of $5,000; and a special assessment of $100.

Dated: March 8, 2022                                   Respectfully submitted,

                                                       STEPHANIE M. HINDS
                                                       United States Attorney

                                                       /s/ *Claudia A. Quiroz*
                                                       _____
                                                       ADAM A. REEVES
                                                       CLAUDIA A. QUIROZ
                                                       Assistant United States Attorneys

UNITED STATES' SENTENCING MEMORANDUM FOR DEFENDANT ROSE LIN
21-CR-0227 WHA

9